**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

MONY Life Insurance Company, f/k/a
The Mutual Life Insurance Company of
New York,

       Plaintiff,

                Civ. No. 07-1547 (RHK/JSM)
                **MEMORANDUM OPINION
                AND ORDER**

v.

Robert G. Ericson, Aimee L. O'Connor
(a/k/a Aimee O'Conchuir), Kathleen L.
Ericson, and Susan E. Mutschler,

       Defendants.

---

John Harper III, Terrance J. Wagener, Krass Monroe, P.A., Minneapolis, Minnesota, for
Plaintiff.

Robert J. Lange, Lange Law Firm, P.A., Bloomington, Minnesota, for Defendant Robert
G. Ericson.

Amy M. Coniaris, David M. Dahlmeier, Foley & Mansfield, P.L.L.P., Minneapolis,
Minnesota, for Defendants Aimee L. O'Connor (a/k/a Aimee O'Conchuir), Kathleen L.
Ericson, and Susan E. Mutschler.

---

   In this interpleader action, Defendant Robert Ericson and his daughters,

Defendants Aimee L. O'Connor, Kathleen L. Ericson, and Susan E. Mutschler (the

"Daughters"), have asserted competing claims to the proceeds of a life-insurance policy

issued by Plaintiff MONY Life Insurance Company ("MONY") to Patricia Copeland,

Ericson's ex-wife and the Daughters' mother. Currently pending before the Court are

Ericson's and the Daughters' cross-motions for summary judgment. For the reasons set forth below, the Court will grant Ericson's Motion and deny the Daughters' Motion.

## BACKGROUND

The following facts are not in dispute. MONY issued a $50,000 life-insurance policy (the "Policy") to Copeland in 1980. At that time, she was married to Ericson; they had three children (the Daughters). Ericson was named the primary beneficiary of the Policy and the Daughters contingent beneficiaries.

Copeland and Ericson divorced in 1986. Ericson remained the primary beneficiary of the Policy, however, and continued making the premium payments until Copeland died in 2006. Upon Copeland's death, Ericson wrote to MONY and requested payment of the $50,000 Policy proceeds. MONY refused to pay, informing Ericson that by operation of Minnesota Statutes Section 524.2-804, he had been disqualified as a beneficiary under the Policy.[1] The Daughters subsequently learned of Ericson's claim to the $50,000 and asserted that they, and not Ericson, are entitled to the money.

As a result of these competing claims, MONY commenced this interpleader action, naming Ericson and the Daughters as Defendants. Ericson cross-claimed against the Daughters, seeking a declaration that he is entitled to the Policy proceeds because the

---

[1] Section 524.2-804, which was signed into law by then-Governor Jesse Ventura on April 19, 2002 (22 years after Copeland designated Ericson as the beneficiary), provides in pertinent part that "the dissolution or annulment of a marriage revokes any revocable . . . beneficiary designation . . . made by an individual to the individual's former spouse in a governing instrument." Minn. Stat. § 524.2-804, subd. 1(1).

retroactive application of Section 524.2-804 to him is unconstitutional.[2] The Daughters, in turn, filed a cross-claim against Ericson, seeking a declaration that they are entitled to the Policy proceeds. MONY has deposited the funds at issue with the Clerk of the Court and the parties have stipulated to MONY's dismissal from this lawsuit;[3] all that remains are the competing declaratory-judgment claims. Ericson and the Daughters have cross-moved for summary judgment on those claims.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine

---

[2] Pursuant to 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 5.1(b), the Court certified Ericson's constitutional challenge to the Minnesota Attorney General. (See Doc. No. 59.) The Attorney General declined to intervene in this action to defend the statute against Ericson's claim. (See Doc. No. 62.)

[3] As a result, MONY's Motion for Summary Judgment is moot.

issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

In support of his Motion, Ericson argues that (1) Section 524.2-804 is unconstitutional as applied to him under Article I, Section 10, clause 1 of the United States Constitution (the "Contracts Clause"), and (2) even if the statute could be constitutionally applied to him, several of its exceptions protect his designation as the Policy beneficiary.[4] The Daughters respond that the statute is constitutional and that none of the exceptions cited by Ericson applies. Because the Court concludes that the statute cannot be constitutionally applied to Ericson, it need not reach the parties' alternative arguments concerning the statute's exceptions.

The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., art. I, § 10, cl. 1. This prohibition "bans any interference with contracts" by state laws. Honeywell, Inc. v. Minn. Life & Health Ins. Guar. Ass'n, 110 F.3d 547, 551 (8th Cir. 1997). As a result, the "laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it" and generally cannot be changed by *ex post facto* legislation. Gen. Motors Corp. v. Romein, 503 U.S. 181, 188 (1992).

---

[4] Ericson also argues that application of Section 524.2-804 violates the Contract Clause of the Minnesota Constitution (Minn. Const. art. I, § 11). The Court need not separately address that argument, however, because "Minnesota Contract Clause challenges are analyzed using the same . . . test" as challenges under the Contracts Clause of the United States Constitution. State ex rel. Hatch v. Employers Ins. of Wausau, 644 N.W.2d 820, 833 (Minn. Ct. App. 2002) (citing Jacobsen v. Anheuser-Busch, Inc., 392 N.W.2d 868, 872 (Minn. 1986)).

In determining whether a state statute has changed the law in violation of the Contracts Clause, a court must first determine whether the statute "has operated as a substantial impairment of a contractual relationship." Id. at 186. "This inquiry has three components: whether there is a contractual relationship, whether . . . the law impairs that contractual relationship, and whether the impairment is substantial." Id. If there has been a substantial impairment, the court must next decide whether there exists a "significant and legitimate public purpose" behind the statute. Equip. Mfrs. Inst. v. Janklow, 300 F.3d 842, 850 (8th Cir. 2002). Finally, if a significant and legitimate public purpose is identified, the court must determine whether the contractual impairment caused by the statute is "based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." Id. (internal quotation marks and alterations omitted).

In a factual setting nearly identical to that presented here, the Eighth Circuit addressed a Contracts-Clause challenge to an Oklahoma revocation-upon-divorce statute similar to Section 524.2-804. The facts of that case, Whirlpool Corp. v. Ritter, 929 F.2d 1318 (8th Cir. 1991), were as follows: James and Darlene Ritter were married in 1972. James obtained a life-insurance policy in 1985 through Whirlpool, his employer, naming Darlene as the beneficiary. Two years later, the Oklahoma legislature passed a statute providing that if a "party to [a] contract with the power to designate the beneficiary of any death benefit dies after being divorced from the beneficiary named to receive such death benefit in the contract, all provisions in such contract in favor of the decedent's former

5

spouse are thereby revoked." Id. at 1319.  The statute expressly applied to life-insurance policies.  Id. at 1320.

James and Darlene divorced on April 7, 1989, and three weeks later, James married Diana Shaw.  Then, on July 9, 1989, James died of a gunshot wound to the head, purportedly fired by Darlene.  Darlene and Diana subsequently asserted competing claims to the life-insurance proceeds, and Whirlpool filed an interpleader complaint naming Darlene and Diana as defendants.  The district court, applying Oklahoma's revocation-upon-divorce statute, disqualified Darlene as the beneficiary and held that Diana was entitled to the life-insurance proceeds.  Darlene appealed, arguing *inter alia* that application of the statute violated the Contracts Clause.  Id. at 1322-23.

The Eighth Circuit, agreeing with Darlene, reversed, holding that James had a right to expect that his wishes regarding his insurance proceeds would be respected, and that "[b]y reaching back in time and disrupting this expectation, the Oklahoma legislature impaired James' contract."  Id. at 1322.  The court further held that:

> This impairment is not insignificant; one of the primary purposes of a life insurance contract is to provide for the financial needs of a person (or persons) designated by the insured. When the Oklahoma legislature changed the rules for interpreting insurance contracts and applied the new rules to completed transactions, it effected a fundamental and pejorative change in the very essence of those contracts.

Id.  Finally, the court held that the statute could not be justified by its intended purpose and underlying rationale.  The court noted that revocation-upon-divorce statutes "anticipate that, upon undergoing a . . . divorce . . ., [insureds] would most likely intend to . . . revoke prior provisions made for their ex-spouses.  The statutes also anticipate that

6

[insureds] will often fail to so . . . revoke, not out of conscious intent, but simply from a lack of attentiveness." Id. While the court recognized that it was reasonable for the Oklahoma legislature to be concerned with these issues, it concluded that they were not universally true and that many individuals might legitimately worry about the financial well-being of an ex-spouse (particularly where the ex-spouse had custody of the couple's children) and hence purposely opt *not* to change the policy. In other words, there existed "a real possibility" that in many instances "the named insured consciously decided not to change the named beneficiary." Id. at 1323. As a result, the Eighth Circuit held that the Oklahoma statute violated the Contracts Clause and was unconstitutional as applied to Darlene. Id.

This case is on all fours with Whirlpool. First, Section 524.2-804 clearly creates a substantial impairment in a contractual relationship, namely, the relationship between MONY and Copeland. By disqualifying Ericson as Copeland's designated beneficiary, Section 524.2-804 has "effected a fundamental and pejorative change in the very essence" of her life-insurance policy. Id. at 1322.[5] Further, under Whirlpool, the purpose behind

---

[5] Unlike the Oklahoma statute at issue in Whirlpool, it is not entirely clear to the Court that Section 524.8-204 applies to life-insurance policies. The statute – which is "nearly identical to § 2-804 of the Uniform Probate Code," Lincoln Benefit Life Co. v. Heitz, 468 F. Supp. 2d 1062, 1066 (D. Minn. 2007) – by its terms applies only to a beneficiary designation in a "governing instrument." Minn. Stat. § 524.2-804, subd. 1(1). While the Uniform Probate Code expressly includes insurance policies within the definition of "governing instruments," see Unif. Probate Code § 1-201(18) (amended 1998), the term "governing instrument" is noticeably absent from the "definitions" section of the Uniform Probate Code as adopted by the Minnesota legislature, see Minn. Stat. § 524.1-201. One could argue that this omission was intentional and was designed to except insurance policies from the reach of the statute, but the legislative history appears to suggest otherwise, see Video of April 15, 2002 Minnesota House Floor Session, available at http://www.house.leg.state.mn.us/htv/archiveshfs.asp?ls_year=82 (last visited January 17, 2008) (indicating that Section 524.2-804 was intended to include life-insurance

the statute – "the legislative judgment that ex-spouses often intend to change their beneficiaries," Lincoln Benefit Life Co. v. Heitz, 468 F. Supp. 2d 1062, 1069 (D. Minn. 2007) – is insufficient to justify such a "radical[] alterat[ion]" of pre-existing life-insurance policies like Copeland's. 929 F.2d at 1323. Pursuant to Whirlpool, therefore, Section 524.2-804 cannot, consistent with the Contracts Clause, be applied retroactively to remove Ericson as the beneficiary of Copeland's life-insurance policy.

Recognizing that Whirlpool presents a substantial hurdle to their case, the Daughters attempt to explain away that decision. They argue that Whirlpool has been roundly criticized and that the Court should give "little, if any, weight" to that decision. (Daughters Mem. at 18; Daughters Reply Mem. at 7-8.) The Daughters are correct that several courts and commentators have rejected Whirlpool's reasoning, including the Joint Editorial Board of the Uniform Probate Code (upon which Section 524.2-804 is based). See, e.g., Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund, 343 F.3d 1311, 1322 (10th Cir. 2003) ("The Whirlpool line of cases has been persuasively criticized by other distinguished authorities."); Joint Editorial Board Statement Regarding the Constitutionality of Changes in Default Rules as Applied to Pre-existing Documents (1991) (attached to Coniaris Aff. as Ex. A) (calling Whirlpool "manifestly wrong"). These authorities note several so-called flaws in Whirlpool's analysis, the most critical being its failure to distinguish between contracts and donative transfers:

---

policies). Ultimately, however, the Court need not opine on this issue because Ericson has not argued in his Motion papers that life-insurance policies are beyond the reach of Section 524.2-804. Accordingly, the Court will assume (as the parties have) that the statute applies to beneficiary designations in such policies.

8

> A life insurance policy is a third-party beneficiary contract. As such, it is a mixture of contract and donative transfer. The Contracts Clause of the federal Constitution appropriately applies to protect against legislative interference with the contractual component of the policy. In [Whirlpool], and in comparable cases, there is never a suggestion that the insurance company can escape paying the policy proceeds that are due under the contract. The insurance company interpleads or pays the proceeds into court for distribution to the successful claimant. The divorce statute affects only the donative transfer, the component of the policy that raises no Contracts Clause issue.

Id. Because revocation-upon-divorce statutes affect only the donative portion of a life-insurance policy (the beneficiary designation), and not the contractual obligation created thereunder (the insurer's obligation to pay), some courts have held that the Contracts Clause is not violated by such statutes. See, e.g., Stillman, 343 F.3d at 1322 ("The Contracts Clause addresses contracts, not donative transfers. Because no contractual obligation is impaired by [Utah's revocation-upon-divorce statute], there is no violation of the federal Contracts Clause in applying the statute here."); Heitz, 468 F. Supp. 2d at 1068 (same).

While commentators (like the Joint Editorial Board) and courts outside of the Eighth Circuit (such as the Tenth Circuit) are free to disregard Whirlpool, this Court is not. See Xiong v. Minnesota, 195 F.3d 424, 426 (8th Cir. 1999) (noting that a district court "ha[s] no power to replace governing circuit law with its own view"); BPS Guard Servs., Inc. v. NLRB, 942 F.2d 519, 524 (8th Cir. 1991) (stating that holdings of the Eighth Circuit Court of Appeals are "binding on all inferior courts and litigants" within the Circuit). Given that Whirlpool addressed the very same issue confronting the Court

here, on nearly identical facts, the Court is obligated to adhere to the Eighth Circuit's holding in that case.[6]

The Daughters also argue that, under the doctrine of *stare decisis*, this Court should follow Heitz, which concluded that the retroactive application of Section 524.2-804 was constitutional. (See Daughters Mem. at 17.) Yet, the undersigned is not obligated, by *stare decisis* or otherwise, to reach the same conclusion as Heitz. See, e.g., Colby v. J.C. Penney Co., 811 F.2d 1119, 1124 (7th Cir. 1987) ("district judges . . . must not treat decisions *by other district judges*, in this and *a fortiori* in other circuits, as controlling") (emphasis in original); Starbuck v. City & County of San Francisco, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another."). Indeed, Heitz relied heavily on Allstate Life Insurance Co. v. Hanson, 200 F. Supp. 2d 1012 (E.D. Wis. 2002), a decision from outside the Eighth Circuit that declined to adopt Whirlpool. In light of the Court's conclusion that Whirlpool controls this case's outcome, it must respectfully depart from the conclusion reached in Heitz.[7]

---

[6] At oral argument, the Daughters asserted for the first time that Whirlpool is distinguishable because no contingent beneficiaries were named in the life-insurance policy at issue in that case, whereas here Copeland designated the Daughters as contingent beneficiaries. This difference in no way alters the Court's Contracts-Clause analysis. Under the facts of Whirlpool and the facts of this case, the named beneficiary was disqualified by operation of law, which "effected a fundamental and pejorative change in the very essence" of the life-insurance policies at issue. 929 F.2d at 1322. That the policy in Whirlpool did not designate a contingent beneficiary in no way changes that result.

[7] Not surprisingly, the Daughters rely heavily upon Heitz in support of their arguments here. They first cite that decision for the proposition that there has been no substantial impairment of a contractual relationship in this case because "Copeland could have simply renamed Mr. Ericson as the beneficiary after the divorce." (Daughters Mem. at 6.) The Eighth

The Daughters next attempt to distinguish <u>Whirlpool</u> by arguing that the statute at issue there was not based on the Uniform Probate Code. (Daughters Mem. at 18; Daughters Reply Mem. at 6-8.) In the Court's view, this is a distinction without a difference. The Oklahoma legislature enacted the statute later struck down by <u>Whirlpool</u> in an effort to protect the (supposed) intent of decedents to revoke designations of their ex-spouses as beneficiaries. <u>See</u> 929 F.2d at 1322. This is also one of the main purposes behind the Uniform Probate Code and, more specifically, Section 524.2-804. <u>See, e.g.</u>, Minn. Stat. § 524.1-102(b)(2) (one purpose behind probate code is "to discover and make effective the intent of a decedent in distribution of property"); <u>Heitz</u>, 468 F. Supp. 2d at 1069 (one purpose of Section 524.2-804 is to "implement[] a rule of construction that reflects legislative judgment that ex-spouses often intend to change their beneficiaries"). Yet, <u>Whirlpool</u> held that, under the Contracts Clause, revocation-upon-divorce statutes cannot be justified by this purpose. 929 F.2d at 1323. The distinction drawn by the

---

Circuit, however, expressly rejected that argument in <u>Whirlpool</u>. <u>See</u> 929 F.2d at 1323. The Daughters also cite <u>Heitz</u> to argue that because Copeland's donative transaction created only an expectancy interest in Ericson, he "has no standing to claim an unconstitutional impairment of his unvested contractual right." (Daughters Mem. at 16.) Yet, <u>Heitz</u> nowhere held that the ex-spouse lacked standing to pursue her claims; indeed, had that been the case, the court likely would have dismissed the action for lack of subject-matter jurisdiction, rather than on the merits. <u>See, e.g.</u> <u>Faibisch v. Univ. of Minn.</u>, 304 F.3d 797, 801 (8th Cir. 2002) ("if a plaintiff lacks standing, the district court has no subject matter jurisdiction"). In any event, even if Ericson lacked standing to directly challenge the constitutionality of the statute, he has third-party standing to challenge the statute on behalf of Copeland. <u>See</u> <u>In re Estate of DeWitt</u>, 54 P.3d 849, 855 n.4 (Colo. 2002) (holding that former spouses had third-party standing to challenge constitutionality of Colorado's revocation-upon-divorce statute); <u>Mearns v. Scharbach</u>, 12 P.3d 1048, 1054-55 (Wash. Ct. App. 2000) (reaching same conclusion for Contracts-Clause challenge to Washington's revocation-upon-divorce statute).

11

Daughters, therefore, is of little import when evaluating the constitutionality of Section 524.2-804 here.

The Daughters also note that there are other purposes behind the probate code, including the simplification and clarification of the law of decedents and ensuring uniformity in probate law among various jurisdictions.  (Daughters Mem. at 6 (citing Minn. Stat. § 524.1-102(b)).)  While these are certainly valid pursuits, the Court questions whether these are the types of "important public purposes" sufficient to justify a "significant" statutory impairment of contractual relations.  See Janklow, 300 F.3d at 859-60 (noting that in order for statute to be constitutional, importance of public purpose behind statute must increase with substantiality of contractual impairment caused by statute).[8]  Moreover, Section 524.2-804 is not reasonably necessary in order to simplify or clarify who should receive the proceeds of a life-insurance policy.  A policy is perfectly clear on its face when an ex-spouse is designated as the beneficiary; it becomes no simpler or clearer merely because the Minnesota legislature has opted to replace the individual designated as the beneficiary with someone else, by operation of law.

## CONCLUSION

Given the significant criticisms of Whirlpool, the Eighth Circuit might well decide that case differently today.  And perhaps the parties here will afford the appellate court an opportunity to do so.  Whether that occurs, however, is not up to this Court.  Because

---

[8] Without citation to any authority, Heitz held that "promoting uniformity among state law treatment of probate and non-probate transfers" is an "important public purpose" sufficient to justify a state statute impairing contractual obligations.  468 F. Supp. 2d at 1069.  The Court does not agree.

12

Whirlpool is factually indistinguishable from this case, the Court is obligated to follow it; doing so renders Section 524.2-804, as applied to Ericson, unconstitutional under the Contracts Clause to the United States and Minnesota Constitutions.[9]

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. The Daughters' Amended Motion for Summary Judgment (Doc. No. 28) is **DENIED**, and the Daughters' Cross-Claim against Ericson (Doc. No. 13) is **DISMISSED WITH PREJUDICE**;

2. Ericson's Amended Motion for Summary Judgment (Doc. No. 32) is **GRANTED**;

3. It is **DECLARED** that Defendant Robert G. Ericson is entitled to the proceeds of Patricia Copeland's $50,000 life-insurance policy, plus interest, which MONY Life Insurance Company deposited with the Clerk of the Court pursuant to the

---

[9] In reaching this conclusion, the Court does not hold that the entire statute is unconstitutional; rather, only that portion of the statute that *retroactively* revokes beneficiary designations in "governing instruments" fails to pass constitutional muster. Nor does the Court hold that said portion of Section 524.2-804 is unconstitutional in all circumstances. There are two types of constitutional challenges to a statute: facial challenges, in which a statute is alleged to be unconstitutional on its face, *i.e.*, in all circumstances, and "as applied" challenges, in which a statute is alleged to be unconstitutional under the particular facts of the plaintiff's case. See Ada v. Guam Soc'y of Obstetricians & Gynecologists, 506 U.S. 1011 (Mem.) (Scalia, J., dissenting from denial of petition for writ of certiorari). Here, Ericson has mounted only an "as applied" challenge to Section 524.2-804. The Court expresses no opinion whether the statute is unconstitutional on its face, that is, whether there exists "no set of circumstances in which the statute can be constitutionally applied." Id.; see also Whirlpool, 929 F.2d at 1323 n.6 (distinguishing between prospective and retroactive application of revocation-upon-divorce statute for purposes of Contracts-Clause analysis). Rather, the Court holds only that Section 524.2-804 cannot be constitutionally applied to Ericson under the facts of this case, *i.e.*, cannot retroactively remove him as the beneficiary of Copeland's life-insurance policy.

Court's March 20, 2007 Order (Doc. No. 3).  If neither an appeal nor a motion for post-judgment relief is filed within 30 days of the entry of Judgment in this matter, the Clerk of the Court is directed to release said funds to Robert G. Ericson; and

4. Plaintiff MONY Life Insurance Company's Motion for Summary Judgment (Doc. No. 24) is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January  22 , 2008             s/Richard H. Kyle
                                      RICHARD H. KYLE
                                      United States District Judge

January 23, 2008